**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| MORRIS ROUTING TECHNOLOGIES, LLC<br><br>     Plaintiff,<br><br>  v.<br><br>COMCAST BUSINESS COMMUNICATIONS, LLC, COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, COMCAST CABLE COMMUNICATIONS, LLC D/B/A XFINITY,<br><br>     Defendants. | Civil Action No. 4:25-cv-853<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Morris Routing Technologies, LLC ("MRT" or "Plaintiff"), for its Complaint against Defendants Comcast Business Communications, LLC, Comcast Cable Communications Management, LLC, and Comcast Cable Communications, LLC d/b/a Xfinity (individually each a "Defendant," and collectively "Comcast" or "Defendants") alleges the following:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

**THE PARTIES**

2. Plaintiff MRT is a limited liability company organized under the laws of the State of Texas with a place of business at 1312 14TH St. Suite 204, Plano TX 75074.

3. On information and belief, Defendant Comcast Business Communications, LLC ("Comcast Business") is a corporation organized under the laws of Pennsylvania.  Since January

27, 2006, Comcast Business has been registered to do business in Texas under Texas SOS file number 800605610. Comcast Business may be served through its registered agent for service, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701 USA**.**

4.    On information and belief, Defendant, Comcast Cable Communications Management, LLC ("Comcast Cable") is a corporation organized under the laws of Delaware. Since November 10, 2011, Comcast Cable has been registered to do business in Texas under Texas SOS file number 801506591. Comcast Cable may be served through its registered agent for service, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701 USA**.**

5.    On information and belief, Defendant Comcast Cable Communications, LLC d/b/a Xfinity ("Xfinity") is a partnership organized under the laws of Delaware. Xfinity may be served through its registered agent, The Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

### JURISDICTION AND VENUE

6.    This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

7.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8.    Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

9.    Comcast is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

10.    This Court has general and specific personal jurisdiction over the Defendants under the laws of the State of Texas, due at least to their substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in

**Page 2 of 21**

the State of Texas.  Comcast has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district.  Venue is also proper in this district because Comcast has a regular and established place of business and has committed acts of infringement in this district.[1]

11.    For example, upon information and belief Comcast has regular and established places of business at: 2740 N. Dallas Parkway, Suite 100, Plano, Texas, 75093; 3500 E. Plano Parkway, Plano, Texas, 75074; 135 Houston St., Lewisville Texas, 75057; 1300 Coit Road, Plano, Texas 75075; and 3033 W. President George Bush Hwy, Plano, Texas 75075.

12.    Comcast also advertises in Texas and the Eastern District of Texas, including but not limited to advertising the geographic coverage of the Comcast networks within this District and to State government agencies.[2]

13.    On information and belief, Comcast has numerous employees who work in Texas, including within the Eastern District of Texas.[3]

14.    Comcast has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of this District, including benefits directly related to Comcast's infringement of the Patents-In-Suit.

15.    Comcast's infringement has thus caused substantial injury to MRT, including in this judicial district.

---

[1] *See, e.g.*, https://corporate.comcast.com/press/releases/comcast-business-closes-masergy-acquisition.
[2] *See, e.g.*, https://texas.comcast.com/; https://business.comcast.com/about-us/press-releases/2023/comcast-business-expands-data-center-footprint-in-texas**;** https://dir.texas.gov/contracts/dir-tele-ctsa-010; https://texas.comcast.com/2023/02/20/comcast-plans-major-network-expansion-in-texas/.
[3] *See, e.g.,* https://corporate.comcast.com/press/releases/comcast-business-closes-masergy-acquisition; https://texas.comcast.com/.

## BACKGROUND

### The Inventions of the Patents-in-Suit

16.     Mr. Robert Paul Morris is the inventor of U.S. Patent Nos. 10,652,133 ("the '133 patent"; Exhibit A), 10,382,327 ("the '327 patent"; Exhibit B), 10,404,582 ("the '334 patent"; Exhibit C), 10,389,625 ("the '625 patent"; Exhibit D), 10,419,334 ("the '100 patent"; Exhibit E), 11,012,344 ("the '344 patent"; Exhibit F), 10,397,100 ("the '100 patent"; Exhibit G) (collectively, the "Patents-in-Suit").  True and correct copies of the Patents-in-Suit are attached as Exhibits A-G.

17.     The Patents-in-Suit resulted from the pioneering efforts of Mr. Morris (hereinafter "the Inventor") in the area of segment-based routing ("SR").  These efforts resulted in the development of methods and apparatuses for improving the routing, provisioning and transport of data packets across networks in the 2012 timeframe using SR over Multiprotocol Label Switching ("MPLS") and IPv6 data planes (*see, e.g.,* '133 patent, col. 20:11-45), which are now referred to as "SR-MPLS" and "SRv6" respectively.

18.     At the time of these pioneering efforts, the most widely implemented technology used to address network traffic engineering was IP-based forwarding using a distributed control plane as well as constrained shortest-path forwarding.  In traditional IP/MPLS networks, routing decisions are made based on destination IP addresses, and packet forwarding decisions are determined hop-by-hop based on routing tables.

19.     MPLS introduced the concept of label switching, where packets are assigned labels at ingress routers and forwarded based on these labels rather than IP addresses, which can improve forwarding efficiency and allow for traffic engineering.  However, explicit state information had to be maintained at all hops along an MPLS path, leading to scalability problems in the control

plane and the data plane.  Additionally, per-connection traffic steering did not take advantage of load balancing offered by equal cost multipath routing typically used in IP networks.

20.     The Inventor conceived of the inventions claimed in the Patents-in-Suit as a way to improve addressing.  (*See, e.g.,* '133 patent, col. 2:57-59.)  Prior to the Inventor's efforts, Internet protocol dealt primarily with addresses and left mapping from names to addresses and mapping from local net addresses to routes to other protocol layers.  The claimed inventions of the Patents-in-Suit establish new relationships between and among names, addresses and routes to improve network operations.

21.     The claimed inventions of the Patents-in-Suit allow the source to choose a path and encode it in the packet header as a sequence of identifiers that identify segments.  (*See, e.g,* '133 patent, col. 18:55-20:45; col. 21:12-23:7; col. 33:13-61; Figs. 2, 9-11, 13.)  Using the claimed inventions of the Patents-in-Suit, networks no longer need to maintain a per-application and per-flow state and need only obey the forwarding information provided in the packet.  This results in a dramatic reduction in the per-flow state that needs to be maintained in network nodes supporting traffic engineered paths.  For example, instead of relying on a complex network of label-switched paths (LSPs) established by control protocols like LDP (Label Distribution Protocol) or RSVP-TE (Resource Reservation Protocol - Traffic Engineering), the inventions claimed in the Patents-in-Suit use source routing where a packet's path through the network is identified in the packet.  (*See, e.g.*, '133 patent, col. 24:61-28:60; col. 30:54-63; col. 38:42-52; col. 41:49-65.)

22.     The Inventor conceived of different ways to implement segment-based routing, including with MPLS-based and IPv6-based networks.  For example, with the claimed inventions of the Patents-in-Suit, a segment identifier can be embodied as an MPLS label and a plurality of segment identifiers can be included in a sequence thereof.  The first segment identifier of the

sequence is processed and upon completion, such segment identifier is removed from the sequence. By removing reliance on label-switched paths established by control protocols, the network architecture is simplified and has greater scalability and flexibility.

23.    In another example, the claimed inventions of the Patents-in-Suit extend IPv6 and allow SR over the IPv6 data plane.  The claimed inventions enable use of multiple segment identifiers embodied as IPv6 addresses in headers and a plurality of segment identifiers embodied as a sequence of IPv6 addresses. A segment identifier is indicated by the destination address of the packet and a pointer another segment identifier.  This allows even more precise control over packet forwarding and even greater flexibility and scalability.

24.    With the inventions claimed in the Patents-in-Suit, network operators can specify explicit paths for packets to travel through the network and can also leverage IPv6's larger address space to improve scalability and define and manage greater numbers of explicit paths.  This also allows the inclusion of service functions directly into the header providing for servicing chaining and integration of network functions.  There is reduced need for state management in routers and because packets carry their path information, it is more secure because of the difficulty attackers face manipulating or spoofing routing information now carried in the packet.

25.    Using the claimed inventions, network bandwidth is used more effectively and performance is optimized.  The control plane is greatly simplified and the amount of state information maintained by network nodes is reduced significantly.  There is less reliance on complex configurations and protocols to control the flow of traffic through a network because operators can define explicit paths.  (*See, e.g.,* '133 patent, col. 24:61-28:60; col. 30:54-63; col. 38:42-52; col. 41:49-57.) This facilitates service chaining where network operators define paths that include service nodes such as firewalls and intrusion detection systems, to improve security,

and load balancers, to optimize performance.  This results in costs savings by reducing the need for over-provisioning of network resources and improving the overall efficiency of the network infrastructure.  There is lower latency and traffic is protected against link and node failures without requiring burdensome additional signaling requirements in the network while providing optimum backup paths.

### Advantage Over the Prior Art

26.     The patented inventions disclosed in the Patents-in-Suits, provide many advantages over the prior art, and in particular improve the operations of networks using a path-based protocol address.  (*See, e.g.,* '133 patent at col. 2:7-59.)  One advantage of the patented invention is that fewer nodes, in particular path nodes, are required to maintain state information for each path in a network. (*See, e.g.,* '133 patent at col. 30:54-63.)

27.     Another advantage of the patented invention is that utilizing path information in the packet header to route a packet through a network reduces or eliminates the need for additional protocols.  (*See, e.g.,* '133, col. 41:49-57.)

28.     Another advantage of the patented invention is that specific network paths may be specified using path information in the packet header, which allows precise traffic control and selective routing for various purposes such as reduced power consumption, decreased processing time or other cost-saving measures.  (*See, e.g.,* '133 patent, col. 23:25-32; col. 51:4-10; col. 52:13-29..)

29.     Yet another advantage of the patented invention is dynamic routing that responds to disruptions in the network by updating the routing path through the network in response.  (*See, e.g.,* '133 patent at col. 35:34-59; col. 36:64-37:51; col. 50:14-18.)  An operation command may be included in the header so that as the data packet is routed through a path node it is routed through

a particular node capable of performing the operation identified by the command in the header. (*See, e.g.,* '133 patent at col. 47:28-33; col. 50:22-28.)

30.    Because of these significant advantages that can be achieved through the use of the patented inventions, MRT believes that the Patents-in-Suit present significant commercial value for companies like Comcast.  Indeed, SRv6 has been identified as a key enabling technology for 5G.  SRv6 can replace GTP-U and also any underlay transport layers and be used as the only transport layer in 5G, dramatically simplifying network operations while providing greater traffic engineering control and enabling other capabilities such as service chaining and network slicing, a main feature of 5G.[4]  SR is a key enabler for traffic engineering and network slicing technology and makes SRv6 "the protocol of choice for backhaul networks for 5G and beyond."[5]  Network slicing is considered a critical technology.  On information and belief, the Comcast Networks support network slicing.[6]

**Technological Innovation**

31.    The patented inventions disclosed in the Patents-in-Suit resolves technical problems related to traffic engineering in networks, particularly the complexity and scalability problems presented by the incredible growth in networking and the Internet.  As the Patents-in-Suit patent explain, one of the limitations of the prior art as regards network routing was that the approach traditionally used for addressing and routing, and the effect on network latency.  (*See, e.g.,* '133 patent, col. 2:7-59.)

32.    The claims of the Patents-in-Suit do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform

---

[4] *See, e.g.*, https://www.segment-routing.net/images/ACG_Segment_Routing_201808.pdf.
[5] *See, e.g.*, https://www.ericsson.com/en/blog/2023/5/bright-future-of-srv6.
[6] *See, e.g.*, https://www.sdxcentral.com/news/comcast-nabs-nokia-5g-sa-core/.

it on the Internet.  Instead, the claims of the Patents-in-Suit recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to efficiently and effectively manage network traffic with optimum utilization of network resources. (*See, e.g.,* '133 patent, col. 50:58-51:10.)

33.    In addition, the claims of the Patents-in-Suit recite inventive concepts that improve the functioning of network hardware such as routers for transferring data packets through a network, particularly by reducing the demand on transit nodes and egress nodes to maintain state information and reducing the number of protocols required.  (*See, e.g.*, '133 patent, col. 41:49-57.)

34.    Moreover, the claims of the Patents-in-Suit recite inventive concepts that are not merely routine or conventional use of transferring information.  Instead, the patented invention disclosed in the Patents-in-Suit provides a new and novel solution to specific problems related to improving network performance and packet routing through networks that are scalable and dynamic.

35.    And finally, the patented inventions disclosed in the Patents-in-Suit do not preempt all the ways that packet routing may be used to improve network trafficking, nor do the Patents-in-Suit patent preempt any other well-known or prior art technology.

36.    Accordingly, the claims in the Patents-in-Suit recite a combination of elements sufficient to ensure that the claims in substance and in practice amount to significantly more than a patent-ineligible abstract idea.

## Internet Engineering Task Force (IETF) and Standard Setting Organizations

37.     The IETF is a standards setting organization.    It publishes technical documents referred to as RFCs that define technical foundations and specify application protocols.[7]  Each RFC is a product of the IETF and represents the consensus of the IETF community.

38.     The IETF has a working group, SPRING, which has published a number of RFCs related to SR, including RFC 8402, RFC 8660, RFC 8663, RFC 8754, RFC 8986, RFC 9256 and RFC 9352 (collectively "SR RFCs").

39.     RFC 8402 is entitled "Segment Routing Architecture" and specifies an architectural framework and requirements for implementing SR, including both SR-MPLS and SRv6.[8]

40.     RFC 8660 is entitled "Segment Routing with the MPLS Data Plane" and "specifies the forwarding behavior to allow instantiating SR over the MPLS data plane (SR-MPLS)."[9]

41.     RFC 8663 is entitled "MPLS Segment Routing over IP" and "describes how SR-MPLS-capable routers and IP-only routers can seamlessly coexist and interoperate through the use of SR-MPLS label stacks and IP encapsulation/tunneling such as MPLS-over-UDP . . . ."[10]

42.     RFC 8754 is entitled "IPv6 Segment Routing Header (SRH)" and "describes the SRH and how it is used by nodes that are Segment Routing (SR) capable."[11]

43.     RFC 8986 is entitled "Segment Routing over IPv6 (SRv6) Network Programming" and "defines the SRv6 Network Programming concept and specifies the base set of SRv6 behaviors that enables the creation of interoperable overlays with underlay optimization."[12]

---

[7] https://www.ietf.org/process/rfcs/.
[8] https://datatracker.ietf.org/doc/rfc8402/.
[9] https://datatracker.ietf.org/doc/html/rfc8660.
[10] https://datatracker.ietf.org/doc/html/rfc8663.
[11] https://datatracker.ietf.org/doc/html/rfc8754
[12] https://datatracker.ietf.org/doc/html/rfc8986

44.     RFC 9256 is entitled "Segment Routing Policy Architecture" and "updates RFC 8402 as it details the concepts of SR Policy and steering into an SR Policy."[13] "SR Policy is an ordered list of segments (i.e., instructions) that represent a source-routed policy."[14]

45.     RFC 9352 is entitled "IS-IS Extensions to Support Segment Routing over the IPv6 Data Plane" and "describes the IS-IS extensions required to support SR over the IPv6 data plane."[15]

46.     Numerous companies supply interoperable equipment and software solutions that support SR-capable networks and the requirements set forth in the SR RFCs.[16]  Comcast also contributed to the development of SR RFCs[17].

47.     Comcast also part of the Open Networking Foundation ("ONF") and participated in the development of Trellis, which it deployed commercially.[18]  The ONF SDN fabric specification, which is part of ONOS, requires the use of SR-MPLS.[19]  Trellis also utilizes segment routing.

---

[13] https://datatracker.ietf.org/doc/html/rfc9256

[14] https://datatracker.ietf.org/doc/html/rfc9256

[15] https://datatracker.ietf.org/doc/html/rfc9352

[16] *See, e.g.*, https://documentation.nokia.com/html/0_add-h-f/93-0073-HTML/7750_SR_OS_Router_Configuration_Guide/appen_standards.pdf; https://eantc.de/wp-content/uploads/2022/03/EANTC-InteropTest2022-TestReport.pdf; https://eantc.de/wp-content/uploads/2023/04/EANTC-InteropTest2023-TestReport.pdf; https://eantc.de/wp-content/uploads/2023/12/EANTC-MPLSSDNInterop2024-TestReport-v1.3.pdf (Nokia, Ericsson, Ribbon Communications, Juniper etc.).

[17] *See, e.g.*, https://datatracker.ietf.org/doc/html/draft-ietf-6man-segment-routing-header-02#:~:text=draft%2Dietf%2D6man%2Dsegment%2Drouting%2Dheader%2D02&text=This%20is%20an%20older%20version,ultimately%20published%20as%20RFC%208754; https://datatracker.ietf.org/doc/draft-filsfils-spring-srv6-network-programming/05/; https://datatracker.ietf.org/doc/draft-ietf-6man-segment-routing-header/08/.

[18] *See, e.g.*, https://web.archive.org/web/20200220075413/https://www.opennetworking.org/member-listing/; https://opennetworking.org/reference-designs/trellis/; https://www.sdxcentral.com/news/comcast-deploys-open-source-trellis-in-multiple-markets/; https://www.fierce-network.com/operators/comcast-puts-open-source-networking-software-into-production.

[19] *See, e.g.*, https://docs.sd-fabric.org/master/specification.html.



https://www.youtube.com/watch?v=IvDq8oQ3I2I&pp=ygUYY29tY2FzdCBvbmYgY29ubmVjdCAyMDE5.

## Trellis Features

- **Bridging** with Access & Trunk VLANs (within a rack)
- **Routing** (inter-rack)
  - IPv4 & IPv6 Unicast routing with MPLS Segment-Routing
  - IPv4 & IPv6 Multicast routing
- **Dual-homing** for compute-nodes and external routers
- **Multi-stage** fabrics (2 layers of spines)
- **vRouter** - entire fabric behaves as a single router
  - BGP (v4/v6) support for external connectivity
  - Static routes, route blackholing
- **DHCP L3 relay** (v4/v6)
- **MPLS Pseudowire**
- **Q-in-Q termination**
- **T3** (Trellis Troubleshooting Tool), **onos-diags**





https://opennetworking.org/wp-content/uploads/2018/12/Trellis-A-Production-ready-Open-source-Networking-Fabric.pdf.

48.    On information and belief, Comcast and its partners and suppliers have implemented SR solutions according to the ONF specifications.[20]

**Comcast's Networks and Accused Instrumentalities**

49.    Comcast operates and provides one or more networks and related services including business and enterprise offerings, Ethernet, Broadband, Cell Xhaul, Access, Core, Metro, Edge, datacenters CDN, mobile and 5G, MVNO, nationwide WiFi network, and Wholesale, and private networks such as its SD-WAN, WAN, SDN, and LAN offerings including MPLS, and related products and services (collectively the "Comcast's Networks").

50.    On information and belief, the Comcast Networks support the functionality specified in the SR RFCs ("Accused Instrumentalities").

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,652,133**

51.    The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

52.    On May 12, 2020, U.S. Patent No. 10,652,133 ("the '133 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

53.    Plaintiff is the assignee and owner of the right, title and interest in and to the '133 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

---

[20] *See, e.g.*, https://wiki.onosproject.org/pages/viewpage.action?pageId=39813572; https://wiki.onosproject.org/display/ONOS/1.15-SR+Routing; https://www.geeksforgeeks.org/open-networking-operating-system-onos-in-software-defined-networks/; https://www.gsma.com/solutions-and-impact/gsma-open-gateway/wp-content/uploads/2023/05/The-Ecosystem-for-Open-Gateway-NaaS-API-development.pdf (at pg. 5).

54.     The '133 patent is valid and enforceable.  A true and correct copy of the '133 patent is attached as Exhibit A.

55.     Upon information and belief, Defendant has and continues to directly infringe at least claim 12 of the '133 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

56.     Exemplary infringement analysis showing infringement of claim 12 of the '133 patent is set forth in Exhibit H. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Comcast with respect to the '133 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '133 patent.

57.     The Accused Instrumentalities infringed and continue to infringe claim 12 of the '133 patent during the pendency of the '133 patent.

58.     MRT has been harmed by Comcast's infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,382,327

59.     The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

60.     On August 13, 2019, U.S. Patent No. 10,382,327 ("the '327 patent"), entitled "METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS FOR ROUTING USING HEADERS INCLUDING A SEQUENCE OF NODE SCOPE-SPECIFIC IDENTIFIERS" was duly and legally issued by the United States Patent and Trademark Office.

61.     Plaintiff is the assignee and owner of the right, title and interest in and to the '327 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

62.     The '327 patent is valid and enforceable.  A true and correct copy of the '327 patent is attached as Exhibit B.

63.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '327 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

64.     Exemplary infringement analysis showing infringement of claim 1 of the '327 patent is set forth in Exhibit I.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Comcast with respect to the '327 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '327 patent.

65.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '327 patent during the pendency of the '327 patent.

66.     MRT has been harmed by Comcast's infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,404,582

67.     The allegations set forth in the foregoing paragraphs are incorporated into this Third Claim for Relief.

68.     On September 3, 2019, U.S. Patent No. 10,404,582 ("the '582 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGAM PRODUCTS USING AN OUTSIDE-SCOPE IDENTIFIER" was duly and legally issued by the United States Patent and Trademark Office.

69.     Plaintiff is the assignee and owner of the right, title and interest in and to the '582 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

70.     The '582 patent is valid and enforceable.  A true and correct copy of the '582 patent is attached as Exhibit C.

71.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '582 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

72.     Exemplary infringement analysis showing infringement of claim 1 of the '582 patent is set forth in Exhibit J.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Comcast with respect to the '582 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '582 patent.

73.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '582 patent during the pendency of the '582 patent.

74.     MRT has been harmed by Comcast's infringing activities.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,389,625

75.     The allegations set forth in the foregoing paragraphs are incorporated into this Fourth Claim for Relief.

76.     On August 20, 2019, U.S. Patent No. 10,389,625 ("the '625 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS FOR USING SPECIFIC IDENTIFIERS TO TRANSMIT DATA" was duly and legally issued by the United States Patent and Trademark Office.

77.     Plaintiff is the assignee and owner of the right, title and interest in and to the '625 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

78.     The '625 patent is valid and enforceable.  A true and correct copy of the '625 patent is attached as Exhibit D.

79.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '625 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

80.     Exemplary infringement analysis showing infringement of claim 1 of the '625 patent is set forth in Exhibit K.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Comcast with respect to the '625 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '625 patent.

81.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '625 patent during the pendency of the '625 patent.

82.     MRT has been harmed by Comcast's infringing activities.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 10,419,334

83.     The allegations set forth in the foregoing paragraphs are incorporated into this Fifth Claim for Relief.

84.     On September 17, 2019, U.S. Patent No. 10,419,334 ("the '334 patent"), entitled "INTERNET PROTOCOL ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

85.     Plaintiff is the assignee and owner of the right, title and interest in and to the '334 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

86.     The '334 patent is valid and enforceable.  A true and correct copy of the '334 patent is attached as Exhibit E.

87.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '334 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

88.     Exemplary infringement analysis showing infringement of claim 1 of the '334 patent is set forth in Exhibit L.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Comcast with respect to the '334 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '334 patent.

89.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '334 patent during the pendency of the '334 patent.

90. MRT has been harmed by Comcast's infringing activities.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 11,012,344

91.     The allegations set forth in the foregoing paragraphs are incorporated into this Sixth Claim for Relief.

92. On May 18, 2021, U.S. Patent No. 11,012,344 ("the '344 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

93. Plaintiff is the assignee and owner of the right, title and interest in and to the '344 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

94. The '344 patent is valid and enforceable.  A true and correct copy of the '344 patent is attached as Exhibit F.

95. Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '344 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

96. Exemplary infringement analysis showing infringement of claim 1 of the '344 patent is set forth in Exhibit M.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Comcast with respect to the '344 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '344 patent.

97. The Accused Instrumentalities infringed and continue to infringe claim 1 of the '344 patent during the pendency of the '344 patent.

98. MRT has been harmed by Comcast's infringing activities.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 10,397,100

99.    The allegations set forth in the foregoing paragraphs are incorporated into this Seventh Claim for Relief.

100.    On August 27, 2019, U.S. Patent No. 10,397,100 ("the '100 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS USING A REGION SCOPED OUTSIDE-SCOPE IDENTIFER" was duly and legally issued by the United States Patent and Trademark Office.

101.    Plaintiff is the assignee and owner of the right, title and interest in and to the '100 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

102.   The '100 patent is valid and enforceable.  A true and correct copy of the '100 patent is attached as Exhibit G.

103.   Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '100 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

104.   Exemplary infringement analysis showing infringement of claim 1 of the '100 patent is set forth in Exhibit N.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Comcast with respect to the '100 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '100 patent.

105.   The Accused Instrumentalities infringed and continue to infringe claim 1 of the '100 patent during the pendency of the '100 patent.

106.   MRT has been harmed by Comcast's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MRT demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MRT demands judgment for itself and against Comcast as follows:

A.   An adjudication that the Comcast has infringed the Patents-in-Suit;

B.   An award of damages to be paid by Comcast adequate to compensate MRT for Comcast's past infringement of the Patents-in-Suit, and any continuing or future infringement

through the date such judgment is entered, including interest, costs, expenses and an accounting

of all infringing acts including, but not limited to, those acts not presented at trial;

     C.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of

MRT's reasonable attorneys' fees; and

     D.     An award to MRT of such further relief at law or in equity as the Court deems just

and proper.


Dated: August 7, 2025                 DEVLIN LAW FIRM LLC


                               */s/  Timothy Devlin*
                               Timothy Devlin
                               Derek Dahlgren (pro hac vice to be filed)
                               1526 Gilpin Avenue
                               Wilmington, Delaware 19806
                               Telephone: (302) 449-9010
                               Facsimile: (302) 353-4251
                               tdevlin@devlinlawfirm.com
                               ddahlgren@devlinlawfirm.com

                               G. Andrew Gordon, (pro hac vice to be filed)
                               Andrew Gordon Law Firm PLLC
                               6518 Ryeworth Dr.
                               Frisco, TX 75035
                               Phone: (408) 390-4473
                               andrew@agordonlawfirm.com

                               *Attorneys for Plaintiff Morris Routing*
                               *Technologies, LLC*